**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JANNX MEDICAL SYSTEMS, INC.**, | ) | **CASE NO.: 1:20-cv-00687-JG** |
| | ) | |
| Plaintiff, | ) | **JUDGE JAMES S. GWIN** |
| | ) | |
| -vs- | ) | |
| | ) | |
| **AGILITI, INC.**, *et al.*, | ) | **FIRST AMENDED COMPLAINT** |
| | ) | |
| Defendants. | ) | |

**NOW COMES** Plaintiff Jannx Medical Systems, Inc., by and through undersigned counsel, pursuant to Fed. R. Civ. P. 15(a)(1) and for its First Amended Complaint hereby states and alleges as follows:

**PARTIES**

1.      Plaintiff Jannx Medical Systems, Inc. ("JMS") is an Ohio corporation with its principal place of business located at 1111 Superior Avenue, Suite 1010, Cleveland, Ohio 44114.

2.      Defendant Agiliti, Inc. ("Agiliti") is a Minnesota corporation with its principal place of business located at 6625 West 78th Street, Suite 300, Minneapolis, Minnesota 55439.

3.      Defendant Zetta Medical Technologies, LLC ("Zetta") is an Illinois limited liability company with its principal place of business located at 1313 Ensell Road, Lake Zurich, Illinois 60047.

**JURISDICTION AND VENUE**

4.      The Court has subject matter jurisdiction over this matter because Plaintiff's claims arise under Ohio law.

5.      The Court has personal jurisdiction over the Defendants because they have sufficient minimum contacts with the State of Ohio, to wit: (i) Defendants entered into the

subject agreements with Plaintiff, an Ohio-based entity and (ii) Defendants regularly conduct business in the State of Ohio.

6.      Venue is proper for the reasons set forth in Paragraphs 4 and 5.

## FACTUAL BACKGROUND

### Introduction

7.      JMS is engaged in the business of managing and maintaining medical equipment for hospitals and other third-party medical providers.

8.      Up until September 1, 2019, JMS had a maintenance contract with MetroHealth Medical Center located in Cleveland, Ohio ("MetroHealth").

9.      On September 1, 2019, JMS lost its contract with MetroHealth to Defendant Agiliti.

10.     As set forth below, Defendants Agiliti and Zetta are liable for breach of contract and related claims because they used JMS confidential trade secrets to steal business.

### Zetta's NDA Breaches

11.     The disputes between JMS and Agiliti date back to December 6, 2018 when JMS and Zetta entered into a Non-Disclosure Agreement dated December 6, 2018 (the "Zetta NDA"). A true and accurate copy of the Zetta NDA is attached hereto as **Exhibit 1** and incorporated herein by reference.

12.     Thereafter, JMS gave Zetta officials sensitive confidential information and trade secrets including, but not limited to, customer contracts, terms sheets, information regarding strategies to retain and attract customers, and related information (the "JMS Trade Secrets").

13.     Zetta employees also visited JMS's offices in Cleveland and St. Louis to gather additional information regarding the JMS Trade Secrets. For example, Zetta's chief financial

officer visited JMS's offices in Cleveland in February of 2019 to review and copy JMS's confidential financial records.

14.     Zetta also met with JMS employees in charge of finances, contract negotiations, operations, and administration.

15.     In February, 2019, Dan Hricko, JMS's vice president of business development ("Hricko"), resigned from JMS and was hired by Zetta as Vice President of Sales.

16.     At the time, the stated intent in Zetta hiring Hricko was to educate Zetta on the "asset management" business.

17.     After just 89 days at Zetta, the company terminated Hricko.

18.     During this time frame Zetta continued to conduct due diligence and continued to express interest in acquiring JMS.

19.     Pursuant to the terms of the Zetta NDA, Zetta agreed not to disclose or utilize the JMS Trade Secrets except as part of its due diligence regarding Zetta potentially buying JMS.

20.     JMS's principal business is maintaining, repairing, and replacing medical equipment for medical providers. These services are referred to as "asset management."

21.     JMS provided the services pursuant to long-term contracts that JMS negotiated with the medical providers.

22.     At the time the Zetta NDA was executed, Zetta was not engaged in the asset management business. Based upon information and belief, Zetta's principal business was maintenance of MRI and CT equipment.

23.     At the outset of the parties' relationship, Zetta was not a competitor of JMS's. However, that quickly changed when Zetta (and its successor, Agiliti) utilized the JMS Trade Secrets to lay the groundwork to steal JMS's customers.

3

24.     Based upon information and belief, Zetta breached the Zetta NDA by, among other things, utilizing the JMS Trade Secrets to directly compete with JMS and interfere with its business relationships.

### Agiliti's NDA Breaches

25.     In July, 2019, Zetta was acquired by Agiliti.

26.     After Agiliti acquired Zetta, Zetta officials provided the JMS Trade Secrets to Agiliti.

27.     In a letter dated July 10, 2019, JMS officials consented to Zetta sharing the confidential JMS Trade Secrets with Agiliti (the "Consent Letter"). A true and accurate copy of the Consent Letter is attached hereto as **Exhibit 2**.

28.     Effective July 10, 2019, Agiliti and JMS also entered into a non-disclosure agreement for the purpose of "evaluating a potential business transaction" between the two companies (the "Agiliti NDA"). A true and accurate copy of the Agiliti NDA is attached hereto as **Exhibit 3** and incorporated herein by reference.

29.     The Agiliti NDA restricted Agiliti's use and disclosure of "Confidential Information", which is defined as:

> 1. **Confidential Information Defined**. The term "Confidential Information" means all confidential and proprietary information belonging to one party (the "Disclosing Party") that is revealed to the other party (the "Receiving Party") during the Disclosure Period, which begins on the effective date and continues in effect for 12 months. Confidential Information, regardless of the form in which it appears, may include, without limitation, information about customers, business and marketing plans, financial data, expertise of employees, forecasts and strategies that is related to the business of the Disclosing Party and is of the type of information that would reasonably be deemed to be confidential.

30.     Therefore, the Agiliti NDA restricted Agiliti's use of information regarding customers and suppliers and its use of other JMS Trade Secrets.

31.     At the time the Agiliti NDA was executed, Agiliti, as the successor of Zetta, continued to express interest in acquiring JMS.

32.     After the Agiliti NDA was executed, Agiliti officials visited JMS's offices in St. Louis to gather more JMS Trade Secrets.

33.     On September 1, 2019, MetroHealth officials informed JMS that MetroHealth was signing a contract with Agiliti and not renewing its contract with JMS.

34.     Agiliti is now directly competing with JMS in the asset management business and stealing JMS's customers.

## COUNT ONE
(Breach of Contract – Agiliti NDA)

35.     Plaintiff hereby restates each and every allegation, whether set forth above or below, as if fully restated herein.

36.     JMS and Agiliti entered into a valid and enforceable contract – the Agiliti NDA.

37.     JMS fulfilled each and every one of its obligations set forth in the Agiliti NDA.

38.     Agiliti breached the Agiliti NDA by using the JMS Trade Secrets to compete with JMS.

39.     JMS has suffered damages in excess of $25,000.00 as a direct and proximate result of Agiliti's breaches.

## COUNT TWO
(Tortious Interference with Business Relationships – Agiliti)

40.     Plaintiff hereby restates each and every allegation, whether set forth above or below, as if fully restated herein.

41.     Based on the facts set forth above, Agiliti has tortiously interfered with JMS's business relationships without privilege to do so.

5

42.     JMS had business relationships with MetroHealth and other medical facilities.

43.     Agiliti was aware of JMS's relationships with MetroHealth and the other medical facilities.

44.     Upon information and belief, Agiliti intentionally interfered with JMS's business relationship with MetroHealth and caused a termination of that relationship by communicating with MetroHealth and persuading it to discontinue its business relationship with JMS.

45.     JMS has suffered damages in excess of $25,000.00 as a direct and proximate result of Agiliti's tortious conduct.

## COUNT THREE
(Violation of Ohio Uniform Trade Secrets Act – Agiliti)

46.     Plaintiff hereby restates each and every allegation, whether set forth above or below, as if fully restated herein.

47.     The JMS Trade Secrets constitute "trade secrets" as defined by the Ohio Uniform Trade Secrets Act ("OUTSA") – R.C. 1333.61 *et seq.* The JMS Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. Furthermore, JMS makes reasonable efforts to maintain the secrecy of the JMS Trade Secrets.

48.     Agiliti violated the OUTSA when it misappropriated the JMS Trade Secrets in order to compete with JMS and steal its customers.

49.     JMS has suffered damages in excess of $25,000.00 as a direct and proximate result of Agiliti's violation of the OUTSA.

6

## COUNT FOUR
(Breach of Contract – Zetta)

50.    Plaintiff hereby restates each and every allegation, whether set forth above or below, as if fully restated herein.

51.    JMS and Zetta entered into a valid and enforceable contract – the Zetta NDA.

52.    JMS fulfilled each and every one of its obligations set forth in the Zetta NDA.

53.    Zetta has breached the Zetta NDA by using the JMS Trade Secrets to compete with JMS.

54.    JMS has suffered damages in excess of $25,000.00 as a direct and proximate result of Zetta's breach.

## COUNT FIVE
(Tortious Interference with Business Relationships – Zetta)

55.    Plaintiff hereby restates each and every allegation, whether set forth above or below, as if fully restated herein.

56.    Based on the facts set forth above, Zetta has tortiously interfered with JMS's business relationships without privilege to do so.

57.    JMS had business relationships with MetroHealth and other medical facilities.

58.    Zetta was aware of JMS's relationships with MetroHealth and the other medical facilities.

59.    Zetta intentionally interfered with JMS's business relationships and caused a termination of the relationships.

60.    JMS has suffered damages in excess of $25,000.00 as a direct and proximate result of Agiliti's tortious conduct.

7

## COUNT SIX
(Violation of Ohio Uniform Trade Secrets Act – Zetta)

61.     Plaintiff hereby restates each and every allegation, whether set forth above or below, as if fully restated herein.

62.     The JMS Trade Secrets constitute "trade secrets" as defined by the Ohio Uniform Trade Secrets Act ("OUTSA") – R.C. 1333.61 *et seq.* The JMS Trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. Furthermore, JMS makes reasonable efforts to maintain the secrecy of the JMS Trade Secrets.

63.     Zetta misappropriated the JMS Trade Secrets in order to compete with JMS and attempt to steal its customers.

64.     JMS has suffered damages in excess of $25,000.00 as a direct and proximate result of Zetta's violation of the OUTSA.

**WHEREFORE**, Plaintiff Jannx Medical Systems, Inc., hereby prays for judgment as follows:

(i)     On Count I (Breach of Contract – Agiliti), for judgment against Defendant Agiliti, Inc. and damages in excess of $25,000.00;

(ii)    On Count II (Tortious Interference with Business Relationships – Agiliti), for judgment against Defendant Agiliti, Inc. and damages in excess of $25,000.00;

(iii)   On Count III (Violation of the Ohio Uniform Trade Secrets Act – Agiliti), for judgment against Defendant Agiliti, Inc. and damages in excess of $25,000.00;

(iv)    On Count IV (Breach of Contract – Zetta), for judgment against Defendant Zetta Medical Technologies, LLC and damages in excess of $25,000.00;

(v)     On Count V (Tortious Interference with Business Relationships – Zetta), for judgment against Defendant Zetta Medical Technologies, LLC and damages in excess of $25,000.00;

8

(vi)    On Count VI (Violation of the Ohio Uniform Trade Secrets Act – Zetta), for judgment against Defendant Zetta Medical Technologies, LLC and damages in excess of $25,000.00;

(vii)   Court costs and fees;

(viii)  Punitive damages and attorney's fees; and

(ix)    Any additional relief the Court deems just and equitable.

Respectfully submitted,


/s/ R. Scott Heasley
Peter Turner (0028444)
R. Scott Healey (0087235)
MEYERS, ROMAN, FRIEDBERG & LEWIS
28601 Chagrin Boulevard, Suite 600
Cleveland, Ohio 44122
Phone: (216) 831-0042
Fax: (216) 831-0542
Email: pturner@meyersroman.com
sheasley@meyersroman.com
*Attorneys for Plaintiff*


**CERTIFICATE OF SERVICE**

A copy of the foregoing was filed this 28th day of May, 2020 via the Court's electronic filing system. All parties of record may access Plaintiffs' Amended Complaint via the Court's ECF system.

/s/ R. Scott Heasley
R. Scott Heasley (0087235)
*One of the Attorneys for Plaintiff*

9