UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| | : | |
| JANNX MEDICAL SYSTEMS, INC., | : | CASE NO. 1:20-cv-00687 |
| | : | |
| Plaintiff, | : | OPINION & ORDER |
| | : | [Resolving Doc. 23] |
| vs. | : | |
| | : | |
| AGILITI, INC., et al., | : | |
| | : | |
| Defendant. | : | |
| | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Jannx Medical Systems, Inc. ("JMS") and Defendants Agiliti, Inc. and Agiliti Health, Inc. (together "Agiliti") entered into a nondisclosure agreement and JMS provided Agiliti with business information.[1]  Now, Plaintiff JMS sues Defendants Agiliti, claiming Defendants breached the nondisclosure agreement and misappropriated JMS's trade secrets.[2]

Defendants Agiliti move to dismiss the suit for failure to state a claim, under Rule 12(b)(6).[3]  Further, Defendants move to dismiss Agiliti, Inc., asserting Agiliti, Inc. was not a party to the agreement.[4]  Plaintiff JMS opposes.[5]

For the following reasons, the Court **GRANTS** Defendants' motion to dismiss.  The Court **DENIES as moot** Defendants' motion to dismiss Agiliti, Inc.

---

[1] Doc. 19.
[2] *Id.*
[3] Doc. 23.
[4] *Id.*
[5] Doc. 28.

Case No. 1:20-cv-00687
GWIN, J.

I.    **Background**

Plaintiff JMS services medical equipment for hospitals and healthcare providers.[6]  In July 2019, Defendants Agiliti were considering acquiring JMS.  JMS and Agiliti entered into a nondisclosure agreement and Plaintiff JMS provided Agiliti with business information and access to JMS employees.[7]  The non-disclosure agreement states in pertinent part:

> 1.   **Confidential Information Defined**.  The term "Confidential Information" means all confidential and proprietary information belonging to one party (the "Disclosing Party") that is revealed to the other party (the "Receiving Party") during the Disclosure Period, which begins on the effective date and continues in effect for 12 months.  Confidential Information, regardless of the form in which it appears, may include, without limitation, information about customers, business and marketing plans, financial data, expertise of employees, forecasts and strategies that is related to the business of the Disclosing Party and is of the type of information that would reasonably be deemed to be confidential.

> 2.   **Use Restriction**.  The Receiving Party agrees to use the Confidential Information for the sole purpose of evaluating and negotiating the Business Transaction.

> 6.   **Confidential Customer Information**.  Company[8] acknowledges that Agiliti might compete directly and/or indirectly with it for customers.  Company agrees that it will not disclose to Agiliti any customer or supplier information that would be deemed confidential and that could be construed to limit such competition.  If it is subsequently determined that such customer and/or supplier information is required for Agiliti to assess the viability of Business Transactions or complete the Business Transaction, Company and Agiliti will execute an addendum to this Agreement whereby both parties will set the terms under which such confidential customer and or/supplier information will be disclosed.[9]

---

[6] Doc. 19 at 3.

[7] *Id.* at 4.

[8] "Company" refers to JMS. Doc. 19-2.

[9] Doc. 19-2.

Case No. 1:20-cv-00687
GWIN, J.

In September 2019, non-party MetroHealth informed JMS that it would not be renewing its maintenance contract with JMS.  Instead, MetroHealth would be contracting with Agiliti.[10]

Plaintiff JMS sues Defendants Zetta and Agiliti, claiming Agiliti breached the nondisclosure agreement and used JMS's confidential business information—its "trade secrets"—to go after JMS's clients, MetroHealth in particular.  JMS sues for breach of contract, violation of the Ohio Uniform Trade Secrets Act, and tortious interference with contract.[11]

Defendants move to dismiss for failure to state a claim.[12]  They argue that JMS's claims fail because the information JMS provided Agiliti was not confidential under the agreement's terms.  Because the information was not confidential, Agiliti contends it could not breach the non-disclosure or violate the Ohio Uniform Trade Secrets Act.  Additionally, Agiliti states the Ohio Uniform Trade Secrets Act preempts JMS's tort claim.[13]

Plaintiff opposes.[14]  JMS asserts that some of the information it gave to Agiliti was confidential and that Agiliti improperly used this information to compete with JMS for MetroHealth's contract.  Further, JMS claims the Ohio Uniform Trade Secrets Act does not preempt its tort claim.[15]

## II.    Discussion

When considering a motion to dismiss under Rule 12(b)(6), the court must determine "whether the complaint contain[s] sufficient factual matter, accepted at true, to state a claim

---

[10] Doc. 19 at 5.
[11] Id.
[12] Doc. 23.
[13] Id.
[14] Doc. 28.
[15] Id.

Case No. 1:20-cv-00687
GWIN, J.

to relief that is plausible on its face."[16]  In making said determination, the court "construes the complaint in the light most favorable to the plaintiff" and "accepts the plaintiff's factual allegations as true."[17]

### A.  JMS fails to state a claim for breach of contract.

In Ohio, to establish breach of contract, the plaintiff must show: (1) there was "a binding contract or agreement"(2) "the nonbreaching party performed its contractual obligations," (3) "the other party failed to fulfill its contractual obligations without legal excuse," and (4) "the nonbreaching party suffered damages as a result of the breach."[18]

JMS's breach of contract claim fails because JMS cannot show that Agiliti breached the non-disclosure agreement to contract with MetroHealth.

JMS and Agiliti recognized that they were competitors who might vie for the same customers.[19]  And they recognized that some of the information JMS might disclose to Agiliti could affect this competition.[20]  So, JMS and Agiliti agreed that Plaintiff JMS would not disclose "customer and supplier information that would be deemed confidential and that could be construed to limit such competition" without first giving notice that it was disclosing confidential information by executing an addendum to the agreement setting out special disclosure terms.[21]  But JMS and Agiliti never executed an addendum.[22]  As a result, JMS

---

[16] *Heinrich v. Waiting Angels Adoption Serv., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alteration in original) (internal quotations omitted).

[17] *Id.*

[18] *Carbone v. Nueva Constr. Grp.*, 83 N.E.3d 375, 380 (Ohio Ct. App. 2017) (citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 144 (Ohio Ct. App. 1996).

[19] Doc. 19-2.

[20] *Id.*

[21] *Id.*

[22] Doc. 28 at 4.

Case No. 1:20-cv-00687
GWIN, J.

cannot establish that any of the customer and supplier information it disclosed to Agiliti was confidential or subject to the use restriction for confidential information.

Plaintiff JMS was required to give notice that it was providing confidential information.  It never did so.

To get around this conclusion, JMS argues that it disclosed other confidential information, including "business and marketing plans, financial data, contracts (which included terms and expiration dates),[23] expertise of employees, forecasts, and information on [its] strategies to develop new customers and retain existing customers" to Agiliti.[24]  This argument is unavailing.  The non-disclosure agreement's plain language suggests that the parties envisioned only "customer and supplier information" as potentially limiting competition between JMS and Agiliti.

Thus, Plaintiff JMS cannot establish that Defendant Agiliti broke the non-disclosure agreement when it entered a contract with MetroHealth, because the information JMS disclosed to Agiliti was either: (1) not confidential, and therefore, not subject to the use restriction, or (2) not of the kind that the parties believed could impact their ability to compete, and therefore, Agiliti did not use it to negotiate with MetroHealth.

## B.   JMS fails to state a claim for violation of the Ohio Uniform Trade Secrets Act.

Under the Ohio Uniform Trade Secrets Act, a claimant whose trade secrets were misappropriated may recover damages for any losses the misappropriation caused.[25]  A trade secret is certain business information that "derives independent economic value, actual or potential, from not being generally known to . . . other persons who can obtain economic

---

[23] Customer contracts are "customer and supplier information."
[24] Doc. 28 at 6.
[25] Ohio Rev. Code § 1333.63.

Case No. 1:20-cv-00687
GWIN, J.

value from its disclosure or use and "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[26]  And misappropriation occurs when there is "[d]isclosure of use of a trade secret of another without the express or implied consent" and "[a]t the time of disclosure or use, [the person] knew or had reason to know that the knowledge of the trade secret that the person acquired . . . was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use."[27]

JMS's Ohio Uniform Trade Secrets Act claim fails because JMS cannot show either: (1) that the information JMS disclosed to Agiliti were "trade secrets," or (2) that Agiliti used JMS's information to compete with JMS for the MetroHealth contract.

As discussed above, the contract's plain language deems any "customer or supplier information" JMS turned over to Agiliti without first executing an addendum with special disclosure terms as not confidential.[28]  This non-confidential information is definitionally not a trade secret.

JMS points to other information it provided Agiliti, including "financial data, expertise of employees, forecasts and strategies" and argues JMS misappropriated this confidential information.[29]  But even assuming this information constitutes "trade secrets," JMS cannot show Agiliti used this information to compete with JMS.  In its second amended complaint, JMS makes a conclusory allegation that "Agiliti misappropriated the JMS Trade Secrets by using the trade secrets to negotiate with MetroHealth to steal JMS's contract."[30]  But JMS does not state any facts to support this conclusion.  Moreover, and again as discussed earlier, the

---

[26] Ohio Rev. Code § 1333.61.
[27] *Id.*
[28] Doc. 19-2.
[29] Doc. 28 at 11.
[30] Doc. 19 at 5.

- 6 -

Case No. 1:20-cv-00687
GWIN, J.

non-disclosure agreement implies that this information is not of the kind that would aid Agiliti in competition with JMS.

Thus, JMS cannot establish that Agiliti violated the Ohio Uniform Trade Secrets Act, because the information JMS disclosed to Agiliti was either: (1) not confidential, and therefore, not subject to the use restriction, or (2) not of the kind that the parties believed could impact their ability to compete, and therefore, Agiliti did not use it to negotiate with MetroHealth.

### C. JMS's Ohio Uniform Trade Secrets Act claim preempts its tortious interference with business relationships claim.

The Ohio Uniform Trade Secrets Act "displace[s] conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret."[31] However, the provision excepts "contractual remedies" and "other civil remedies that are not based on misappropriation."[32]  The Ohio Supreme Court has not yet determined the Act's preemption clause's scope.[33]  Still, courts in the Sixth Circuit have interpreted the Ohio Uniform Trade Secrets Act to preempt "any claim regarding theft or misuse of confidential proprietary, or otherwise secret information falling short of trade secret."[34]  But the Act preempts other state law claims "only to the extent that they are based on misappropriation-of-trade-secrets facts."[35]

---

[31] Ohio Rev. Code § 1333.67.
[32] Id.
[33] *Office Depot, Inc. v. Impact Office Prod., LLC,* 821. F.Supp.2d 913, 919 (N.D. Ohio 2011).
[34] *Id.* at 918–19 (quoting *Allied Erecting and Dismantling Co.,* 649 F.Supp.2d at 720) (internal quotations omitted).
[35] *Id.* (citing *Allied Erecting and Dismantling Co.,* 649 F.Supp.2d at 724).

Case No. 1:20-cv-00687
GWIN, J.

JMS claims that Agiliti tortiously interfered with its MetroHealth contact when "Agiliti used the JMS Trade Secrets to convince MetroHealth not to renew its contract with JMS."[36] But JMS argues its claim "survives preemption because it alleges far more that Agiliti's improper use and disclosure of JMS Trade Secrets."[37]  It states that "Agiliti purposefully interfered with JMS's existing longstanding business with MetroHealth by deterring and ultimately, preventing JMS from doing further business with MetroHealth."[38]

This argument is not persuasive.  JMS and Agiliti were competitors.  And Agiliti was free to go after JMS's clients so long as it did not violate the non-disclosure agreement. Therefore, JMS's tortious interference claim rests solely on the issue of whether Agiliti violated the agreement by misappropriating JMS's confidential information when it negotiated with MetroHealth.

The Ohio Uniform Trade Secrets Act preempts JMS's tort claim.

### III.    Conclusion

The Court **GRANTS** Defendants' motion to dismiss for failure to state a claim for which the Court can grant relief.  The Court **DENIES as moot** Defendants' motion to dismiss Agiliti, Inc. as a party.


IT IS SO ORDERED.


Dated: December 17, 2020                    *s/     James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE

---

[36] Doc. 19 at 7.
[37] Doc. 28 at 7.
[38] *Id.*